**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ARLIS DALE GREATHOUSE**                                                      **PLAINTIFF**
**ADC #133023**

**v.**                              **No: 5:18-cv-00285 JM-PSH**

**DONALD COMPTON**                                                            **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District James M. Moody

Jr. You may file written objections to all or part of this Recommendation.  If you do so, those

objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2)

be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not

objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Arlis Dale Greathouse filed a complaint pursuant to 42 U.S.C. § 1983 and an

application to proceed *in forma pauperis* on November 7, 2018.  Doc. Nos. 1 & 2.  Greathouse

was granted leave to proceed *in forma pauperis* and ordered to file an amended complaint

identifying claims relating to only one issue.  *See* Doc. No. 4.  He filed an amended complaint on

December 3, 2018, limiting his claims to those against Mental Health Supervisor Donald Compton.

(Doc. No. 6).  The Court recommended that all defendants except Compton be dismissed from this

case and that only Greathouse's Eighth Amendment deliberate indifference claims be allowed to

proceed.  Doc. No. 8.  The Court further recommended that Greathouse's due process claims based on Compton's alleged violation of prison procedure be dismissed because prisoners do not have a federally protected due process right to require prison officials to comply with internal rules or procedures.  *Id.* (citing *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).  The Court's recommendation was subsequently adopted.  *See* Doc. No. 9.  Accordingly, the only remaining defendant is Compton.

Before the Court is a motion for summary judgment, a brief in support, and a statement of facts filed by Compton, claiming that Greathouse did not fully exhaust his available administrative remedies before he filed this lawsuit (Doc. Nos. 29-31).  Greathouse filed a response to the defendant's motion, a statement of disputed facts, and a declaration (Doc. Nos. 33-35).  For the reasons described herein, the undersigned recommends that Compton's motion for summary judgment be granted.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  An assertion that a fact cannot be disputed or is genuinely disputed

must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Analysis

Compton argues that he is entitled to summary judgment because Greathouse failed to exhaust his administrative remedies as to his claims against Compton before he filed this lawsuit. *See* Doc. No. 29. In support of his motion, Compton submitted the ADC's grievance policy (Doc. No. 31-1); the declaration of Shelly Byers, the custodian of the ADC's medical grievance records (Doc. No. 31-2); and a copy of grievance VSM18-01683 (Doc. No. 31-3).

### A.    *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 31-1 at 4. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id*. at 5. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 6. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 5-6. A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id*. at 6-7. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id*. at 8. If a formal grievance is medical in nature, it is forwarded to the appropriate medical personnel for response. *Id*. at 9. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can appeal to the Deputy Director. *Id*. at 10-12. Once the Deputy Director responds or the appeal is rejected, the grievance process is exhausted. *Id*. at 12. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id*. at 13. The grievance policy specifically

4

states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 17.

The ADC grievance policy requires inmates to name each individual involved. *See* Doc. No. 31-1 at 5-6. The United States Court of Appeals for the Eighth Circuit has determined that failure to name specific defendants can be a procedural deficiency, and prison officials' acceptance and resolution of a procedurally deficient grievance serves to establish proper exhaustion. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (PLRA's exhaustion requirements are satisfied if grievance is considered on the merits, even if it could have been denied for procedural deficiencies). *See also Bower v. Kelley*, 494 Fed. Appx. 718 (8th Cir. 2012) (unpublished per curiam). The failure to name a defendant as required by the ADC grievance policy may constitute a procedural defect that is waived if the defendant's conduct forming the basis of the claim against him or her is adequately described in the grievance and the failure to name the defendant does not prevent the ADC from investigating the grievance on the merits. *See Daniels v. Hubbard,* No. 5:14CV00360 BSM, 2015 WL 9222627, at *1–2 (E.D. Ark. Dec. 17, 2015). This is a fact-intensive analysis. For example, in *Burns v. Eaton*, the Court affirmed the dismissal of a claim against a defendant who was not named in the grievance and whose conduct was not addressed in the grievance. 752 F.3d 1136 (8th Cir. 2014). However, the relevant grievance specifically named another individual, and was therefore proper under ADC policy. *Id.* at 1141-1142. Prison officials were able to investigate the conduct of the named individual, and had no reason to question whether other individuals or claims should have been investigated. *Id.* In other cases, a plaintiff's failure to name a defendant in a grievance has been held not to prevent exhaustion where the ADC has enough information to adequately investigate the grievance, does so, and decides the grievance on the merits. *See e.g., Chapman v. Norris*, No. 5:15CV00103-DPM-JTK, 2016 WL 4483862, at

*4 (E.D. Ark. Apr. 19, 2016), *report and recommendation adopted in part, rejected in part sub*

*nom. Chapman v. Gibson*, No. 5:15-CV-103-DPM-JTK, 2016 WL 4483849 (E.D. Ark. Aug. 24,

2016).

**B.     The Complaint**

Greathouse alleges that Compton was aware that he was not receiving needed mental health

treatment and failed to take corrective action.  Doc. No. 6.  Greathouse's complaint states, in part:

> Mr. Compton is the mental health supervisor and rehab program manager.  He is
> the person that answer the grievance I have filed, and it is his job here at Varner
> Supermax to make sure I am given adequate mental health help.  Because I was not
> diagnosed with a mental health illness at my intake screening in 2005, Mr. Compton
> has showed deliberate indifference towards my mental health treatment.  My mental
> health illness has arisen or happen after years of lock up, but just because it happen
> after I was locked up does not mean I shouldn't be given adequate help in
> addressing the issue.

Doc. No. 6 at 9.  In addition, a reading of Greathouse's complaint as a whole makes clear that he

asserts a failure to take corrective action claim against Compton.  *See* Doc. Nos. 24 & 26.

**C.     Exhaustion as to Compton**

In her declaration, Byers identified one medical grievance submitted and appealed by

Greathouse in the three years before he filed this lawsuit on November 7, 2018:  VSM18-01683.

*See* Doc. No. 31-2 at 1.  Greathouse does not contend he submitted other grievances that may

exhaust his claims.  *See generally* Doc. Nos. 33 & 34.

Greathouse submitted VSM18-01683 on June 18, 2018, and proceeded to Step Two on

June 20, 2018.  Doc. No. 31-3 at 3.  Greathouse grieved:

> I've been having mental health issue due to prolong Ad. Seg. Lock down status,
> only been outside out lock down about /appx 12 month out of over 13 years.  I've
> been begging the mental health staff for help for years at this unit, got Grievance
> dated back to 2015 to show this, my Inmate will go back to were I talked to staff In
> 2011 about this issue.  Respectfully towards some staff working to help these folks,
> I don't need somebody just to ask me if I'm going to hurt myself, or somebody else,
> then don't know how to help with no other issues.  I have a right to obtain counsel

6

and help from a doctor who can help me address these issue, and do so in a confidentiality manner that doesn't allow C.O. staff working here to talk with other inmates and staff about my personal issues. Why there is policy set up to were I can talk w/ mental health staff were I'm hand cuff to table ect. Were security can view on camera/video monitering without hearing outside myself and doctor. Can I please get the help I need for somebody. (End)

*Id.* Compton responded:

Your complaint is regarding having been locked down for a long period of time and feeling you should be afforded counseling in privacy away from the security staff's ability to overhear your issues. Your assignment to restrictive housing does limit the amount of confidentiality you would have with the mental health staff. Because this is a penitentiary, safety and security will always come before confidentiality. My staff conducting weekly rounds report that you haven't recently requested any services from our department. A mental health staff member will be assigned to interview you regarding your concerns. If you do not want to discuss them openly, you are free to write them down on paper and provide them. I would encourage you to work your way out of restrictive housing back into general population where there is more of a confidential setting available. Consequently, I find no merit to this grievance.

*Id.* at 2. Greathouse appealed:

I will try to address Mr. Compton's response in order, (1) I understand I'm in the penitentiary and safety & security overrides all matter in here, that's way the A.D.C. had set policy A.D. 16-08 & others that allow safety, security as well as confidentiality In Supermax setting, as Rehab program manager Mr. Compton should know & understand the policys. (2) the staff conducting weekly rounds have no PHD/M.D. nor schooling to help address my issues they can only ask if I want to hurt myself or others, then put in cell with gown (paper) for 3 days until come back & ask if I'm ready for staff back. Thats no help. (3) I can't work myself to population. I'm on transfer status alone, have no control over that, I've been asking for help since 2015, even after having myself in 2016 once off cell watch, no help from staff outside or Recter, who no longer works here.

*Id.* Director Rory Griffin responded to Greathouse's appeal and stated:

You appealed this by restating your complaint. You have been seen on a routine and regular basis by mental health staff during rounds in your housing area. During these rounds you have not voiced any mental health concerns that would warrant mental health intervention. You are receiving adequate and appropriate mental health services.

*Id.* at 1.

7

Greathouse argues that he exhausted his claims against Compton by naming him in his appeal. Greathouse further argues that the ADC did not reject his appeal for naming a new person or issue but addressed it on the merits. The Court disagrees. Greathouse's grievance specifically complained about mental health staff – he was dissatisfied with the mental health rounds he received and a lack of confidentiality. Compton responded to those concerns, and Greathouse restated his concerns in his appeal. His only complaint about Compton was that Compton should know the policies in place concerning confidentiality. Director Griffin did not address a complaint about Compton on the merits; rather, he addressed Greathouse's continued complaints about mental health rounds in restricted housing.

To comply with the ADC's grievance policy, Greathouse was required to specifically grieve Compton's claimed indifference to Greathouse's medical needs by failing to take action on Greathouse's behalf.[1] Because Greathouse did not do so, he did not exhaust available administrative remedies and his claims against Compton should be dismissed.

### IV. Conclusion

Greathouse did not exhaust a grievance describing his claims against Compton. Therefore, the undersigned recommends that Compton's motion for summary judgment (Doc. No. 29) be granted. Greathouse's claims should be dismissed without prejudice for failure to exhaust available administrative remedies.

---

[1] The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To establish liability against a defendant in a supervisory role, an inmate must prove that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action or tacitly authorized the offending acts. *See, e.g., Luckert v. Dodge Cty.,* 684 F.3d 808, 817 (8th Cir. 2012); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

DATED this 19th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE